TROUTMAN SANDERS LLP
Jennifer Mathis, Bar No. 187275
jennifer.mathis@troutman.com
Jenni Katzer, Bar No. 253684
jenni.katzer@troutman.com
5 Park Plaza, Suite 1400
Irvine, CA 92614
Telephone: 949.622.2700
Facsimile:  949.622.2739

Attorneys for Plaintiff
ALLIED WORLD ASSURANCE COMPANY
(U.S.), INC.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALLIED WORLD ASSURANCE COMPANY (U.S.), INC., <br><br> Plaintiff, <br><br> v. <br><br> XAVIENT INFORMATION SYSTEMS, INC. and RAJEEV TANDON, <br><br> Defendants. | Case No.  2:20-cv-2523 <br><br> **COMPLAINT FOR DECLARATORY RELIEF** |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Allied World Assurance Company (U.S.) Inc. ("Allied World"), by their counsel, file this Complaint against Defendants Xavient Information Systems, Inc. and Rajeev Tandon (collectively, "Defendants").   For its causes of action, Allied World alleges as follows:

## NATURE OF THE ACTION

1.     This matter involves an insurance coverage dispute regarding the availability of coverage to Defendants under Forcefield Private Company Management Liability Package Policy No. 0309-7485 issued by Allied World to

41794977v3

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Xavient Information Systems ("Xavient") for the August 18, 2017 to August 18, 2018 **Policy Period** (the "Policy"), in connection with a lawsuit captioned *MD Synergy Solutions, LLC v. Xavient Information Systems, Inc., Xavient Digital LLC, Rajeev Tandon aka Rajiv Tandon, and Does 1 through 50*, Case No. 18STCV07988, Superior Court of the State of California for the County of Los Angeles—Stanley Mosk Courthouse (the "*MDSS* Action").[1]

2. After receiving notice of the of the *MDSS* Action, Allied World issued a February 21, 2019 coverage letter to Xavient where Allied World informed Defendants that there was no coverage available under the Policy for the *MDSS* Action.

3. Allied World has determined that coverage for Defendants in connection with the *MDSS* Action is precluded for several reasons, including by the Policy's IP Exclusion, Contract Exclusion and Anti-Trust Exclusion (defined below). Defendants, however, contend that coverage is available under the Policy for the *MDSS* Action.

4. Accordingly, through this action, Allied World seeks an adjudication that Allied World does not owe Defendants any reimbursement of **Defense Costs** or **Loss** in connection with the *MDSS* Action.

## **PARTIES**

5. Allied World is incorporated in the State of Delaware with its principal place of business located in New York, New York. Allied World legally transacts business in the State of California.

6. Xavient Information Systems, Inc. is a corporation organized and existing under the laws of the State of Nevada with its principal place of business located in Simi Valley, California.

---

[1] Aside from headings, terms appearing in bold are defined in the Policy.

**COMPLAINT FOR DECLARATORY RELIEF**

7.     Upon information and belief, Rajeev Tandon ("Tandon") is a citizen of and resides in the State of California.

## JURISDICTION AND VENUE

8.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Complete diversity of citizenship exists between the parties, as Allied World is a citizen of Delaware and New York and Defendants are citizens of Nevada and California.  The amount in controversy exceeds the minimum $75,000, exclusive of interest and costs, as Defendants have incurred well in excess of $75,000 in attorneys' fees and costs for which they are seeking coverage from Allied World and the *MDSS* Action seeks $20 million in damages from Defendants.  An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties regarding coverage for the *MDSS* Action.

9.     This Court has personal jurisdiction over Defendants in that Xavient is a corporation with its principal place of business in the state of California and Tandon resides in California.

10.     Venue is proper in this Court because the *MDSS* Action is currently pending in Superior Court of the State of California for the County of Los Angeles, Xavient's principal place of business is in this district and division, Tandon resides in this district and division, and this district and division is where performance obligations under the Policy, if any such insurance is available, are due.

## FACTUAL BACKGROUND

## The Forcefield Private Company Management Liability Package Policy

11.     Allied World issued Forcefield Private Company Management Liability Package Policy No. 0309-7485 to Xavient Information Systems for the August 18, 2017 to August 18, 2018 **Policy Period**.  Pursuant to Endorsement No. 26, Run-Off Coverage, the Policy provides a Run-Off Period from February 6, 2018 through February 6, 2024.  Subject to its terms and conditions, the Policy contains numerous coverage Sections, including a Directors & Officers Liability

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**COMPLAINT FOR DECLARATORY RELIEF**

Coverage Section (the "D&O Coverage Part"). The D&O Coverage Part contains a separate limit of liability of $6 million and is subject to a $25,000 all **Claims** retention. A true and correct copy of the Policy is attached hereto as "Exhibit A" and incorporated herein by reference.

12.    Insuring Agreement I.A. of the D&O Coverage Part provides, in relevant part, that Allied World agrees to: "pay on behalf of any **Insured Person** the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against such **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions, unless the **Company** is required or permitted to pay such **Loss** to or on behalf of the **Insured Person** as indemnification." [D&O Coverage Part, Section I.A.]

13.    Insuring Agreement I.B. of the D&O Coverage Part provides, in relevant part, that Allied World agrees to: "pay on behalf of the **Company** the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against any **Insured Person** for any **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions, if the **Company** pays such **Loss** to or on behalf of the **Insured Person** as indemnification." [D&O Coverage Part, Section I.B.]

14.    Insuring Agreement I.C. of the D&O Coverage Part provides, in relevant part, that Allied World agrees to: "pay on behalf of the **Company** the **Loss** arising from a **Claim**, first made during the **Policy Period** (or Discovery Period, if applicable) against the **Company** for any **Wrongful Act**, and reported to the **Insurer** in accordance with Section V. of the General Terms and Conditions." [D&O Coverage Part, Section I.C.]

15.    Section II.M. of the D&O Coverage Part defines "**Insured**" to include the **Company** and any **Insured Person**. [D&O Coverage Part, Section II.M.] The **Company**, in turn, is defined to include the **Named Insured**. [General Terms and

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**COMPLAINT FOR DECLARATORY RELIEF**

Conditions, Section II.B.]  Xavient Information Systems is listed as the **Named Insured** on the Declarations Page. [Declarations, Item 1.]  Xavient Information Systems thus qualifies as an **Insured** under the Policy.  Xavient Digital LLC, however, is not an **Insured** under the Policy.

16.     Section II.N. of the D&O Coverage Part defines "**Insured Person**" to include, in relevant part, any **Executive**.  [D&O Coverage Part, Section II.N.1.]  An "**Executive**" includes, in relevant part, any "past, present or future duly elected or appointed director, officer, [or] member of the board of managers of the **Company**."  [D&O Coverage Part, Section II.E.]  Tandon qualifies as an **Insured Person** in his capacity as the former Chief Executive Officer of Xavient.

17.     Section V.A. of the Policy's General Terms and Conditions provides, in relevant part, "[t]he **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer**, under this Policy, give written notice to the **Insurer** . . . of a **Claim** made against an **Insured** as soon as practicable after the **Company's** General Counsel or Risk Manager, or any individual with functionally equivalent responsibilities, becomes aware of the **Claim**."  [General Terms and Conditions Section V.A.]

18.     Section V.B. of the Policy's General Terms and Conditions provides, in relevant part: "[n]otwithstanding the above, in no event shall notice of any **Claim** be provided to the **Insurer** later than ninety (90) days after the end of the **Policy Period** or the Discovery Period if applicable."  [General Terms and Conditions, Section V.B.]

19.     Section V.D. of the Policy's General Terms and Conditions provides, "[a]ll **Related Claims** shall be deemed to be a single **Claim** made on the date on which the earliest **Claim** within such **Related Claims** was first made, or when the earliest **Claim** within such **Related Claims** is treated as having been made in accordance with Section V.C. above, whichever is earlier."  [General Terms and Conditions, Section V.D.]

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**COMPLAINT FOR DECLARATORY RELIEF**

20. Section V.A. of the D&O Coverage Part provides, in relevant part, that Allied World "does not assume any duty to defend any **Claim** under this Coverage Section. However, the **Insurer** shall have the right to fully and effectively associate with the **Insured** in the control, investigation, defense and settlement of any **Claim**." [D&O Coverage Part, Section V.A.]

21. Section V.B. of the D&O Coverage Part provides, in relevant part, that "[t]he **Insured(s)** shall defend and contest any **Claim** made against them." [D&O Coverage Part, Section V.B.]

22. Section V.D. of the D&O Coverage Part provides: "[i]n the event and to the extent that the **Insureds** shall not be entitled to payment of such **Defense Costs** under the terms and conditions of this Coverage Section, such payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally and according to their respective interests." [D&O Coverage Part, Section V.D.]

23. Section II.B. of the D&O Coverage Part defines "**Claim**" in relevant part, as any: "(1) written demand for monetary, non-monetary or injunctive relief made against an **Insured**; (2) judicial . . . proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by . . . [the] service of a complaint or similar pleading . . ." [D&O Coverage Part, Section II.B.]

24. Section II.F. of the General Terms and Conditions defines "**Related Claims**" as "all **Claims** for **Wrongful Acts** based upon, arising out of, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, transactions or events." [General Terms and Conditions, Section II.F.]

25. Pursuant to Section II.O. of the D&O Coverage Part, "**Loss**" does include: "(a) amounts for which the **Insureds** are not legally liable; (b) amounts which are without legal recourse to the **Insureds**; (c) taxes; (d) fines or penalties . . . (e) amounts deemed uninsurable under applicable law . . . (g) amounts paid or

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 6 -

**COMPLAINT FOR DECLARATORY RELIEF**

incurred by the **Company** to comply with a judgment or settlement for non-monetary or injunctive relief." [D&O Coverage Part, Section II.O.]

26. Section III.P. of the D&O Coverage Part, as amended by Endorsements Nos. 15 and 18 (the "IP Exclusion") provides: "[t]his coverage section shall not cover any **Loss** in connection with any **Claim** . . . alleging, arising out of, based upon, or attributable to, or in consequence of any actual or alleged plagiarism, infringement or violation of any copyright, patent, trademark or service mark or the misappropriation of intellectual property, ideas or trade secrets; provided, however, that this Exclusion shall not apply to a **Securities Claim**." [D&O Coverage Part, Section III.P., as amended by Endorsements Nos. 15 and 18.]

27. Section III.D. of the D&O Coverage Part, as amended by Endorsement No. 19 (the "Contract Exclusion"), provides: "[t]his coverage section shall not cover any **Loss** in connection with any **Claim** . . . based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract or agreement; provided however, this Exclusion shall not apply: (1) to the extent that such **Insured** would have been liable in the absence of such contract or agreement; or (2) to any **Securities Claim**[.]" [D&O Coverage Part, Section III.D., as amended by Endorsement No. 19.]

28. Endorsement No. 14, Anti-Trust Exclusion – Insured Persons Carveout (the "Anti-Trust Exclusion") adds the following exclusion to Section III of the D&O Coverage Part: "[t]his Coverage Section shall not cover any **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to any violation of any law, whether statutory, regulatory or common, as respects any of the following:  anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships; provided, however, that this Exclusion shall not apply to any **Claim** brought against an **Insured Person** under Insuring Agreements A. and B." [D&O Coverage Part, Endorsement No. 14.]

**COMPLAINT FOR DECLARATORY RELIEF**

29.     Endorsement No. 21 (the "Non-Compete Exclusion") adds the following exclusion to Section III. of the D&O Coverage Part: "[t]his Coverage Section does not cover any **Loss** in connection with any **Claim** based upon, arising from, or in consequence of the **Insured's** hiring of any person who actually or allegedly: (i) breaches an employment agreement, a non-compete agreement/clause or a covenant not to compete between such person and his or her former employer; (ii) misappropriates any intellectual property, confidential or proprietary information, product information, ideas, trade secrets or customer/client lists of such person's former employer; (iii) solicits or encourages any other person to leave his or her current employer to become an employee of the **Company**; (iv) intentionally interferes with his or her former employer's contractual or business relations; or (v) breaches a fiduciary duty, or duty of loyalty, owed to his or her former employer by terminating the employment relationship between such person and his or her former employer."  [D&O Coverage Part, Endorsement No. 21.]

30.     Section III.A of the D&O Coverage Part (the "Improper Profit Exclusion"), provides: "[t]his Coverage Section shall not cover any **Loss** in connection with any **Claim** . . .  arising out of, based upon or attributable to the gaining of any profit or financial advantage or improper or illegal remuneration by an **Insured**, if a final judgment or adjudication establishes that such **Insured** was not legally entitled to such profit or advantage or that such remuneration was improper or illegal[.]"  [D&O Coverage, Section III.A.]

31.     Section III.B. of the D&O Coverage Part (the "Fraud Exclusion"), provides: "[t]his Coverage Section shall not cover any **Loss** in connection with any **Claim** . . . arising out of, based upon or attributable to any deliberate criminal or deliberate fraudulent act or any willful violation of law by an **Insured**, if a final judgment or adjudication establishes that such act or violation occurred[.]"  [D&O Coverage, Section III.B.]

**COMPLAINT FOR DECLARATORY RELIEF**

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

32.     Endorsement No. 9 of the Policy (the "Professional Services Exclusion") adds the following exclusion, in relevant part, to the D&O Coverage Part: "[n]o coverage will be available for **Loss** from any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty in connection with the rendering of, or failure to render services to a third party, whether or not a fee for such services has been made…." [D&O Coverage Part, Endorsement No. 9.]

## The MDSS Action

33.     MD Synergy Solutions, LLC ("MD Synergy") filed its original complaint commencing the *MDSS* Action on December 12, 2018.

34.     MD Synergy filed its First Amended Complaint in the *MDSS* Action on February 22, 2019.

35.     MD Synergy filed its Second Amended Complaint in the *MDSS* Action on July 31, 2019 ("SAC"). A copy of the SAC is attached hereto as "Exhibit B" and incorporated herein by reference.

36.     On February 26, 2020, the parties to the *MDSS* Action filed a stipulation striking certain allegations from the SAC ("Stipulation"). A copy of the Stipulation is attached hereto as "Exhibit C" and incorporated herein by reference.

37.     The SAC, as modified by the Stipulation, is the operative complaint and is summarized below.

38.     As stated above, this action pertains to the availability of insurance coverage for Defendants in connection with the *MDSS* Action.

39.     The *MDSS* Action is brought by MD Synergy against Xavient, Xavient Digital LLC, Tandon and John Doe Defendants 1 through 50.

40.     According to the SAC, MD Synergy provides technology applications and software to providers and consumers in the healthcare field.

**COMPLAINT FOR DECLARATORY RELIEF**

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

41.     The SAC alleges that, in 2012, MD Synergy "and Xavient entered into a written agreement, as subsequently modified in writing, for Xavient to develop new cloud software for [MD Synergy] and to manage [MD Synergy's] operations as its technology partner."  SAC at ¶ 83.

42.     Pursuant to this agreement, Xavient allegedly agreed to invest $2 million in MD Synergy in exchange for a 20 percent equity ownership interest in MD Synergy and a position on MD Synergy's Board of Directors.  *Id.* at ¶ 11.

43.     In addition, MD Synergy allegedly agreed to transfer software developers and other staff – trained and knowledgeable in the healthcare space – to Xavient to work on developing the new cloud software product for MD Synergy. Xavient's $2 million investment in MD Synergy would allegedly be made by paying the salaries of these allocated MD Synergy software developers and staff at cost, with no overhead.  *Id.* at ¶ 32.

44.      In reliance on its agreement with Xavient, MD Synergy allegedly shut down its own operations in India and transferred all of its staff and assets, including, but not limited to, source code, intellectual property, and domain knowledge in the health care field to Xavient's India operations base.  *Id.* at ¶¶ 34-36.  According to the SAC, MD Synergy did so "on condition that they would be returned to [MD Synergy] upon project completion…."  *Id.* at ¶ 63.

45.     MD Synergy further alleges that, pursuant to the parties' agreement, "Xavient would be provided with [MD Synergy's] intellectual property, including but not limited to healthcare domain knowledge and product source code, solely for the purpose of Xavient supporting [MD Synergy] as its partner and developing new cloud software for [MD Synergy].  Xavient would return all of [MD Synergy's] intellectual property at the completion of the development of cloud software. * * * [MD Synergy also] would provide Xavient with access to [MD Synergy's] computers, servers, and other hardware for purposes of Xavient providing support as partner and developing new cloud software product for [MD Synergy], and that

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**COMPLAINT FOR DECLARATORY RELIEF**

all intellectual property and personal property would be returned to [MD Synergy] at completion of development of cloud software." *Id.* at ¶ 100.

46.     The agreement between Xavient and MD Synergy was allegedly memorialized in writing, verbally accepted by Xavient, and Xavient began performing under the terms of the agreement. *Id.* at ¶¶ 32, 37, 41.

47.     In December 2014, Xavient demanded a refund of $600,000 paid to date in salaries to the MD Synergy project team and agreed to maintain a 10 percent equity ownership interest in and Board position with MD Synergy to ensure continuity of development of the new cloud software product. *Id.* at ¶ 43.

48.     MD Synergy asserts that it was compelled to modify its agreement with Xavient and repay the $600,000 because MD Synergy had already provided Xavient with all of its intellectual property, invested $4 million in product development and services, and Xavient had not yet delivered to MD Synergy the promised new cloud software product. *Id.* at 44.

49.     MD Synergy alleges that after it "returned $600,000 to Xavient, development and productivity by Xavient of [MD Synergy's] new cloud software product declined dramatically." *Id.* at ¶ 45.

50.     MD Synergy alleges that Xavient overbilled for work purportedly performed on the cloud project and improperly redeployed legacy MD Synergy staff to work on other Xavient projects. *Id.* at ¶ 47.

51.     In addition, MD Synergy specifically alleges that Xavient intentionally committed various acts to disrupt MD Synergy's business.

52.     For example, MD Synergy alleges that "[i]n about early October 2016, in order to disrupt [MD Synergy's] business, Xavient intentionally restricted [MD Synergy's] access to its own system, emails, and internet access for several days." *Id.* at ¶ 49.  MD Synergy asserts that this disruption allegedly caused irreparable harm to MD Synergy's relationship with a key client. *Id.*

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

41794977

- 11 -

**COMPLAINT FOR DECLARATORY RELIEF**

53.     MD Synergy also alleges that Xavient tampered with the source code of MD Synergy's cloud live application, making the application unstable, and then blocked MD Synergy's U.S.-based employees from accessing the system to fix the problem.  According to the SAC, "[t]his disruption by Xavient cost [MD Synergy] to lose its key client, generating over a million dollars [of] revenue annually, in June 2017."  *Id.* at ¶ 51.

54.     MD Synergy alleges that by October 2016, Xavient "had begun to misappropriate [MD Synergy's] healthcare domain knowledge and new cloud software original source code, upon which [MD Synergy's] entire business and survival depended."  *Id.* at ¶ 54

55.     In November 2016, the partnership between MD Synergy and Xavient was terminated before Xavient delivered the new cloud software product.  *Id.* at ¶ 55.

56.     After the partnership ended, Xavient allegedly delivered a corrupted copy of the original source code of the cloud software to MD Synergy and returned MD Synergy's servers in inoperable condition.  *Id.* at 56-57.  MD Synergy asserts that Xavient intentionally corrupted the source code and rendered the servers inoperable in order to "disrupt [MD Synergy's] business, to prevent [MD Synergy's] from servicing its customers, and to deliberately sabotage [MD Synergy's] operations."  *Id.* at ¶ 57.

57.     MD Synergy further alleges that, after the partnership ended, "Xavient retained and/or prevent[ed] [MD Synergy's] trained developers and managers, vital for [MD Synergy], to work for [MD Synergy]."  *Id.* at ¶ 60.

58.     MD Synergy allegedly "paid Xavient approximately $10,000,000 for the work that Xavient was to perform for [MD Synergy] . . . including but not limited to, new software development, product development, product support, and management.  Xavient did not deliver any finished or marketable product to [MD Synergy]."  *Id.* at ¶ 61.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 12 -

**COMPLAINT FOR DECLARATORY RELIEF**

59.     MD Synergy alleges that TELUS International ("TELUS"), a leading global business process and information technology services provider in telecommunications and healthcare acquired Xavient in or about October 2017 for approximately $250,000,000.  *Id.* at ¶ 64.

60.     MD Synergy alleges that Xavient misappropriated MD Synergy's "healthcare domain knowledge, [MD Synergy's] intellectual property, original source code of [MD Synergy's] new cloud software developed by Xavient, and [MD Synergy's] trained, knowledgeable and experienced teams retained by it, for healthcare product and services as its healthcare division."  *Id.* at ¶ 65.

61.     MD Synergy asserts that Xavient's misappropriation of MD Synergy's intellectual property, particularly its cloud software, increased Xavient's valuation and the TELUS acquisition price reflected, at least in part, consideration for acquisition of MD Synergy's intellectual property.  *Id.* at ¶ 65.

62.     MD Synergy further alleges "that Xavient has retained and misappropriated [MD Synergy's] . . . intellectual property assets, particularly its cloud software code, healthcare domain knowledge, trained and experienced development team, and its software development managers for their own development and operation of healthcare business which was then sold to TELUS."  *Id.* at ¶ 67.

63.     MD Synergy further alleges that all of Xavient's actions were taken at the direction of, and approved and authorized by, Xavient's founder and CEO, Defendant Tandon.

64.     According to the SAC, "Xavient is in breach of contract by failing and refusing to deliver functioning, marketable product and software to [MD Synergy]."  *Id.* at ¶ 89.

65.     Further, "Xavient breached the implied covenant of good faith and fair dealing by, *inter alia*… retaining the original source code of the new cloud software developed for [MD Synergy] by Xavient and paid for by [MD Synergy]; altering

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**COMPLAINT FOR DECLARATORY RELIEF**

the source code of the new cloud software developed by Xavient; . . . converting [MD Synergy's] IP Property, *i.e.*, the original source code of the new cloud software developed by Xavient for [MD Synergy]; . . . [and] retaining [MD Synergy's] development team folded in at Xavient by imposing unlawful restrictive covenants and non-compete agreements on staff who had performed services for [MD Synergy], including [MD Synergy's] own staff that were folded in Xavient for management by Xavient as [MD Synergy's] technology partner." *Id.* at ¶ 94.

66.    According to the SAC, Defendants engaged in unlawful, unfair and fraudulent business practices by, among other things, "[c]onverting and misappropriating [MD Synergy's] IP Property; Altering the original source code . . . [and] [i]mposing unlawful restrictive covenants and [non-compete] agreements on staff who had performed services for [MD Synergy], including on [MD Synergy's] own staff that were not only wrongfully treated as Xavient's employees when it was agreed that they would be treated as [MD Synergy's] employees and were [an] extension of [MD Synergy's] in-house team under the partnership model of software development under which the teams were folded in at Xavient for scaling and managing them for developing software and not transferred…." *Id.* at 97.  MD Synergy alleges that Xavient and Tandon's unfair business practices "are anti-competitive and harm competition." *Id.* at ¶ 101.

67.    According to the SAC, Xavient and Tandon intentionally interfered with MD Synergy's business relationships with its customers by, among other things, "[a]ltering the original source code of the new cloud software . . . [p]roviding MDSS with corrupted source code . . . [and] [r]estricting MDSS' access to its systems . . ." *Id.* at ¶ 109.

68.    According to the SAC, Xavient, as a member of MD Synergy's Board of Directors, allegedly breach its fiduciary duties to MD Synergy by, among other things, "retaining and misappropriating the source code for [MD Synergy's] original software and products; … converting [MD Synergy's] IP Property; …

**COMPLAINT FOR DECLARATORY RELIEF**

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

[and] converting and misappropriating [MD Synergy's] … IP Property, and trained and experienced staff to enter the healthcare domain in competition with [MD Synergy]." *Id.* at ¶ 119.

69.    Based on these allegations, MD Synergy currently asserts five causes of action in the *MDSS* Action: (1) Breach of Written Contract; (2) Breach of Implied Covenant of Good Faith and Fair Dealing; (3) Violation of *Business & Professions Code* Section 17200; (4) Intentional Interference with Contractual Relations (customer); and (5) Breach of Fiduciary Duty.

70.    MD Synergy seeks damages, punitive damages, royalties, exemplary damages, attorneys' fees and costs, injunctive relief and restitution.

### Xavient's Notice to Allied World

71.    On January 14, 2019, Allied World received notice of the original Complaint filed on December 12, 2018.

72.    After receiving notice of the *MDSS* Action, Allied World learned for the first time that Xavient had received a demand letter dated January 30, 2018, from counsel for MD Synergy ("Demand Letter") seeking (1) 90% of the value that Xavient received in the sale of its information technology product and services to TELUS; (2) damages for fraudulent billing; (3) damages for the deliberate disruption of MDSS operations; and (4) damages from the lost opportunities caused by Xavient's delays in services to MDSS.

73.    The *MDSS* Action is based upon the same or related facts, circumstances, situations or transactions as the Demand Letter.

### Allied World's Coverage Letters

74.    On February 21, 2019, Allied World informed Xavient that there was no coverage available under the Policy for the *MDSS* Action.

75.    In Allied World's original denial dated February 21, 2019, Allied World advised that "[a]ll of the allegations in MDSS' Complaint arise from the misappropriation of MDSS's intellectual property and/or breaches of verbal

**COMPLAINT FOR DECLARATORY RELIEF**

agreements between the parties.  The totality of the Complaint is therefore precluded from coverage based on multiple exclusions in the Policy . . ."  In addition to the IP Exclusion and the Contract Exclusion, Allied World reserved its rights to deny coverage based on the Anti-Trust Exclusion, the Non-Compete Exclusion and whether the Demand Letter was reported as soon as practicable as required by General Terms and Conditions Section V.A, among other coverage defenses.

76.    By letter dated March 18, 2019, Xavient informed Allied World that MD Synergy filed a First Amended Complaint in the *MDSS* Action and demanded coverage under the Policy.

77.    By letter dated April 11, 2019, Allied World informed Xavient that there was still not coverage under the Policy because the First Amended Complaint "unequivocally alleges that Xavient and Tandon misappropriated MD Synergy's intellectual property and trade secrets."  Allied World incorporated all of its previous reservations by reference and continued to reserve all rights under the Policy.

78.    Between April 2019 and March 2020, Allied World and Xavient exchanged additional correspondence regarding the applicability of the IP Exclusion.

79.    On March 2, 2020, Defendants informed Allied World that MD Synergy had dismissed its cause of action regarding misappropriation of trade secrets and that trial was scheduled for April 16, 2020.

80.    On March 6, 2020, Defendants informed Allied World that mediation in the *MDSS* Action had been set for March 16, 2020 and demanded that Allied World withdraw its denial of coverage and reimburse the Defendants' defense costs.

**COMPLAINT FOR DECLARATORY RELIEF**

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

### **The Instant Coverage Dispute**

81.     Allied World has determined that coverage under the Policy is not available to Defendants in connection with the *MDSS* action in light of the Policy's IP Exclusion, the Contract Exclusion, and the Anti-Trust Exclusion, among other reasons.

82.     Upon information and belief, Defendants disagree with Allied World's coverage assessment and have taken the position that coverage for Defendants is available under the Policy in connection with the *MDSS* Action.

### **FIRST CAUSE OF ACTION**

### **(Declaratory Relief – IP Exclusion)**

83.     Allied World repeats and realleges each and every allegation contained in Paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.     The IP Exclusion bars coverage for Defendants for any **Loss**, including reimbursement of **Defense Costs**, they have incurred or will incur in connection with the *MDSS* Action.

85.     The Policy's IP Exclusion provides: "[t]his coverage section shall not cover any **Loss** in connection with any **Claim**… alleging, arising out of, based upon, or attributable to, or in consequence of any actual or alleged plagiarism, infringement or violation of any copyright, patent, trademark or service mark or the misappropriation of intellectual property, ideas or trade secrets; provided, however, that this Exclusion shall not apply to a **Securities Claim**."  [D&O Coverage Part, Section III.P., as amended by Endorsements Nos. 15 and 18.]

86.     "**Claim**" is defined in the Policy to mean any "judicial… proceeding, whether civil or criminal, for monetary, non-monetary or injunctive relief commenced against an **Insured**, including any appeal therefrom, which is commenced by… [the] service of a complaint…."  [General Terms & Conditions, Section II.B.2.a.]

- 17 -

87.     Coverage is unavailable for Defendants under the Policy, because the *MDSS* Action is a civil judicial proceeding commenced against an **Insured** alleging and arising out of misappropriation of intellectual property and seeking monetary, non-monetary, and injunctive relief.  Because the *MDSS* Action falls within the IP Exclusion, coverage is unavailable for Defendants under the Policy.

88.     An actual and justiciable controversy exists between Allied World and Defendants regarding whether coverage is available to Defendants under the Policy in connection with the *MDSS* Action.

89.     Accordingly, Allied World is entitled to a judicial declaration that the Policy does not provide coverage for any **Loss**, including the reimbursement of **Defense Costs** incurred by Defendants or that will be incurred by Defendants in connection with the *MDSS* Action.

## SECOND CAUSE OF ACTION

### (Declaratory Relief – Contract Exclusion)

90.     Allied World repeats and realleges each and every allegation contained in Paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91.     The Contract Exclusion bars coverage for Defendants for any **Loss**, including the reimbursement of **Defense Costs** they have incurred or will incur in connection with the *MDSS* Action.

92.     On information and belief, Defendants contend that the Contract Exclusion is inapplicable and that the Policy provides coverage in connection with the *MDSS* Action.

93.     The Contract Exclusion provides: "[t]his coverage section shall not cover any **Loss** in connection with any **Claim** … based upon, arising from, or in consequence of any actual or alleged liability of any **Insured** under any express contract of agreement; provided however this Exclusion shall not apply: (1) to the extent that such Insured would have been liable in the absence of such contract or

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**COMPLAINT FOR DECLARATORY RELIEF**

agreement; or (2) to any **Securities Claim**….”  [D&O Coverage Part, Section III.D., as amended by Endorsement No. 19.]

94.     Coverage is unavailable for Defendants under the Policy because the *MDSS* Action arises from Xavient’s alleged breach of its written agreement to develop new cloud software for MD Synergy and to manage MD Synergy’s operations as its technology partner.  Because the *MDSS* Action falls within the Contract Exclusion, coverage is unavailable for Defendants under the Policy.

95.     An actual and justiciable controversy exists between Allied World and Defendants regarding whether coverage is available to Defendants under the Policy in connection with the *MDSS* Action.

96.     Accordingly, Allied World is entitled to a judicial declaration that the Policy does not provide coverage for any **Loss**, including the reimbursement of **Defense Costs** incurred by Defendants or that will be incurred by Defendants in connection with the *MDSS* Action.

## **THIRD CAUSE OF ACTION**

### **(Declaratory Relief – Anti-Trust Exclusion as against Xavient)**

97.     Allied World repeats and realleges each and every allegation contained in Paragraphs 1 through 96 of this Complaint as if fully set forth herein.

98.     The Anti-Trust Exclusion bars coverage for Xavient for any **Loss**, including the reimbursement of **Defense Costs** Xavient has incurred or will incur in connection with the *MDSS* Action.

99.     On information and belief, Xavient contends that the Anti-Trust Exclusion is inapplicable and that the Policy provides coverage in connection with the *MDSS* Action.

100.   The Anti-Trust Exclusion provides: “[t]his Coverage Section shall not cover any **Loss** in connection with any **Claim** alleging, arising out of, based upon or attributable to any violation of any law, whether statutory, regulatory or common, as respects any of the following:  anti-trust, business competition, unfair

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**COMPLAINT FOR DECLARATORY RELIEF**

1  trade practices or tortious interference in another's business or contractual

2  relationships; provided, however, that this Exclusion shall not apply to any **Claim**

3  brought against an **Insured Person** under Insuring Agreements A. and B." [D&O

4  Coverage Part, Section III, as amended by Endorsement No. 14]

5      101.   Here, coverage is unavailable for Xavient under the Policy because the

6  *MDSS* Action alleges that (1) Xavient engaged in unfair and anti-competitive

7  business practices violating California's Business & Professions Code § 17200, *et*

8  *seq.* and (2) Xavient intentionally interfered in MD Synergy's contractual

9  relationships. Because the *MDSS* Action falls within the Anti-Trust Exclusion,

10  coverage is unavailable for Xavient under the Policy.

11      102.   An actual and justiciable controversy exists between Allied World and

12  Xavient regarding whether coverage is available to Xavient under the Policy in

13  connection with the *MDSS* Action.

14      103.   Accordingly, Allied World is entitled to a judicial declaration that the

15  Policy does not provide coverage for any **Loss**, including the reimbursement of

16  **Defense Costs** incurred by Xavient or that will be incurred by Xavient in

17  connection with the *MDSS* Action.

18  **FOURTH CAUSE OF ACTION**

19  **(Declaratory Relief, Other Defenses)**

20      104.   Allied World repeats and realleges each and every allegation contained

21  in Paragraphs 1 through 103 of this Complaint as if fully set forth.

22      105.   Coverage for the *MDSS* Action is barred or limited by operation of

23  other provisions in the Policy and applicable law, including but not limited to

24  whether Xavient complied with its notice obligations (General Terms and

25  Conditions, Section V.A.), and/or whether the Non-Compete Exclusion, the

26  Improper Profit Exclusion, the Fraud Exclusion and/or the Professional Services

27  Exclusion preclude coverage, and whether the amounts that MDSS seeks against

28  Defendants fall within the Policy's definition of "**Loss**."

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**COMPLAINT FOR DECLARATORY RELIEF**

106.   An actual and justiciable controversy exists between Allied World and Defendants regarding whether coverage for **Loss**, including the reimbursement of **Defense Costs**, is available to Defendants under the Policy in connection with the *MDSS* Action by operation of these provisions.

107.   Accordingly, Allied World is entitled to a judicial declaration that the Policy does not provide coverage for any **Loss** or for the reimbursement of **Defense Costs** incurred by Defendants or that will be incurred by Defendants in connection with the *MDSS* Action.

## FIFTH CAUSE OF ACTION

### (Reimbursement/Restitution/Unjust Enrichment)

108.   Allied World repeats and realleges each and every allegation contained in Paragraphs 1 through 107 of this Complaint as if fully set forth herein.

109.   Allied World has no duty to reimburse Defendants' **Defense Costs** in connection with the *MDSS* Action, because the Policy precludes coverage for it. Despite this fact, at their request, Allied World has agreed to partially reimburse Defendants' **Defense Costs** in connection with the *MDSS* Action subject to a full and complete reservation of rights, including the right to seek reimbursement of **Defense Costs**.

110.   Allied World has no duty to provide any indemnity coverage on behalf of Defendants with respect to any settlement or judgment reached in connection the *MDSS* Action.

111.   To the extent any uncovered payments were or are made by Allied World in reimbursement of **Defense Costs** and/or for indemnity of Defendants in connection with the *MDSS* Action, Defendants have been or will be unjustly enriched, because they were not entitled to such amounts under the terms of the Policy and/or applicable law. [D&O Coverage Part, Section V.D.]

112.   There is no other adequate remedy at law for the unjust enrichment of Defendants at Allied World's expense.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**COMPLAINT FOR DECLARATORY RELIEF**

113.   Accordingly, Allied World is entitled to restitution and reimbursement for any and all amounts Allied World paid or will pay on behalf of Defendants for which it is determined that coverage is not afforded under the Policy, according to proof.

### PRAYER FOR RELIEF

WHEREFORE, Allied World requests that the Court enter judgment in its favor against Defendants as follows:

A.   On the First Cause of Action, a judicial declaration that the IP Exclusion bars coverage for any **Loss**, including the reimbursement of **Defense Costs**, as those terms are defined in the Policy, incurred by Defendants or that will be incurred by Defendants in connection with the *MDSS* Action.

B.   On the Second Cause of Action, a judicial declaration that the Contract Exclusion bars coverage for any **Loss**, including the reimbursement of **Defense Costs**, as those terms are defined in the Policy, incurred by Defendants or that will be incurred by Defendants in connection with the *MDSS* Action.

C.   On the Third Cause of Action, a judicial declaration that the Anti-Trust Exclusion bars coverage for any **Loss**, including the reimbursement of **Defense Costs**, as those terms are defined in the Policy, incurred by Xavient or that will be incurred by Xavient in connection with the *MDSS* Action.

D.   On the Fourth Cause of Action, a judicial declaration that certain provisions of the Policy bar coverage for any **Loss**, including the reimbursement of **Defense Costs**, as those terms are defined in the Policy, incurred by Defendants or that will be incurred by Defendants in connection with the *MDSS* Action.

E.   On the Fifth Cause of Action, restitution and reimbursement for any and all amounts Allied World paid or will pay on behalf of Defendants in reimbursement of **Defense Costs** incurred in connection with the *MDSS* Action and for any and all amounts Allied World paid or will pay on behalf of Defendants in connection with any settlement or judgment reached in connection with the *MDSS*

- 22 -

**COMPLAINT FOR DECLARATORY RELIEF**

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   Action.

2     F.  Costs of suit and interest on any reimbursement of **Defense Costs**; and

3     G.  Such other and further relief as this Court deems just and proper.

4

5   Dated:  March 16, 2020     TROUTMAN SANDERS LLP

6

7              By:_____/s/_____

8               Jennifer Mathis
            Jenni Katzer

9               Attorneys for Plaintiff
            ALLIED WORLD ASSURANCE

10              COMPANY (U.S.), INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

41794977

- 23 -

COMPLAINT FOR DECLARATORY RELIEF